IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, | : |
| | : |
| Plaintiff, | : No. 2:24-cv-51 |
| | : |
| v. | : |
| | : |
| | : JURY TRIAL DEMANDED |
| PINE- RICHLAND SCHOOL DISTRICT, | : |
| | : |
| Defendant. | : |

**DEFENDANT PINE-RICHLAND SCHOOL DISTRICT'S
BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT
TO RULE 12(b)(1) and 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

AND NOW COMES the Defendant, Pine-Richland School District (the "School District" or the "Defendant"), by and through its attorneys, Christina L. Lane, Esquire, Krisha A. DiMascio, Esquire, Maiello Brungo & Maiello, LLP, and Jaime Doherty, Esquire and Lisa Seifert, Esquire of GRB LAW, and hereby files this Brief in Support of Motion to Dismiss Plaintiff's Complaint ("Defendant's Motion").

I. **INTRODUCTION**

This dispute between the Parties involves the Defendant School District's Administrative Regulation 103(B) ("AR 103(B)") which was adopted by the Schol board as a purposeful and well-considered effort to provide information and direction to the students and staff regarding gender and gender identity as presented in the educational environment. Plaintiff alleges this guidance document violates their constitutional rights

to determine the care, custody and control of their children and the right to obtain information and opt out of AR 103(B) under the Protection of Pupil Rights Amendment, PPRA, 20 U.S.C. §1232(h). Plaintiff seeks to enjoin the School District from relying on, using, implementing, or enforcing the guidance document.  Conversely, the School District endeavors to meet its legal obligations to provide all of its students an opportunity to "achieve their maximum potential through programs in the school regardless of race, color, age, creed, religion, sex, sexual orientation, gender or gender identity…"  AR 103(B)

## II.     PROCEDURAL HISTORY

Plaintiff Jane Doe ("Plaintiff") initiated this action via the filing of a Complaint (Plaintiff's Complaint") on January 12, 2024.  (See Doc. No. 1, generally). The Parties mutually agreed to extend the filing of responsive pleadings to March 22, 2024. The claims contained in Plaintiff's Complaint arise from an alleged deprivation of their Fourteenth and Fifth Amendment rights, and an alleged deprivation of rights provided to them under 20 U.S.C. § 1232h, the Protection of Pupil Rights Amendment ("PPRA") to the Family Educational Rights to Privacy Act ("FERPA") (See Doc. No. 1).  Plaintiff's claims purport to challenge AR 103(B) which was passed and enacted by the District on July 17, 2017. (See Doc. No. 1).[1]

## III.     FACTUAL ALLEGATIONS

---

[1] AR 103(B) was developed pursuant to a Confidential Settlement of the litigation in the matter Evancho v. Pine-Richland School District, Docket No. 2:16-cv-01537-MRH. In the Consent Judgment ending the litigation on August 4, 2017, Judge Hornak retained jurisdiction of the parties for purposes of enforcement and interpretation, and modification of the Consent Judgment.

Document Number: 376840
Matter ID: 10787.239

According to the Plaintiff's Complaint, Plaintiff has concerns that her child may be having some issues with respect to their gender identity based on recent behaviors attributed to viewing online videos and recent socializing with a different peer group. These fears are the sole basis at which Plaintiff seeks to challenge the District's AR 103(b). AR 103(b) states that "[a]ll students have a right to privacy and this right includes the right to keep one's transgender status private at school." It goes on to clarify that disclosing a student's transgender status to the student's "parents/guardians . . . may also violate privacy laws, such as the Family Educational Rights and Privacy Act (FERPA)" (See Doc. No. 1 at ¶¶7, 8). The Complaint further alleges that AR 103(B) states "[t]o ensure the safety and well-being of the student, District personnel should not disclose a student's transgender status to others, including the student's parents/guardians or other District personnel, unless: (1) legally required to do so, or (2) the student has authorized such disclosure." (See Doc. No. 1 at ¶11). Further, the Complaint alleges that AR 103(B) states "notifying a student's parent/guardian about his or her gender identity or transition may be unnecessary", and "in some cases, informing parents/guardians about a student disclosure carries risk for the student, such as physical and/or emotional abuse, abandonment, and/or removal from the home." (See Doc. No. 1 at ¶¶15, 16).Lastly, the Complaint purports to list the requirements of the District employees imposed by AR 103(B), as follows:

   a. Address the student by his or her preferred pronouns;

   b. Use the student's preferred name, gender, and pronouns on "school records or documents, such as school IDs, classroom rosters or the yearbook";

    c. Permit the student to use whatever bathroom that the student chooses;

    d. Allow the student to participate on the sports team corresponding with the student's chosen gender; and

    e. Undergo training provided by a psychologist and a legal team to ensure compliance with AR 103(B).

Plaintiff's Complaint otherwise grossly mischaracterizes AR 103(B), and outright alleges erroneously that AR 103(B):

    f. Prohibits District personnel from disclosing a student's transgender status to a parent or guardian;

    g. Requires the School District engage in a secret psychological evaluation of the student, conducted by government psychologists, who assist the child with a plan in transitioning to a new gender;

    h. States that the School District shall provide a "Gender Transition Team" to the student; and

    i. Would require that the "Gender Transition Teams" work to assist any student regardless of age in his or her transition without any involvement of the student's parents or guardians and without notifying the parents;

(See Doc. No. 1 ¶¶ 12, 18, 20, 21).

        To the contrary, AR 103(B) states explicitly that "Relevant school staff, such as the building principal, guidance counselor, and school psychologist, will work actively and immediately to discuss disclosure to parents/guardians given their legal rights and the importance of collaboration between the school staff, student, and parents/guardians", and at no point in time references a "Gender Transition Team" or imposes a requirement

that a "secret psychological evaluation" be conducted. Plaintiff's Complaint goes on to recount interactions that Doe had with District personnel, stating that she sent written notice to the District that she did not want the District to refer her child to any mental health counselor or social worker for evaluation and demanding that the District notify her within three days of learning about any matters related to gender identity or gender dysphoria expressed by her child. (See Doc. No. 1 at ¶24). The Complaint then asserts that the District told Doe that, pursuant to AR 103(B), they would not notify her if her child requested to be addressed by different pronouns, a different name, or otherwise exhibited behavior consistent with gender dysphoria or a desire to transition to a gender other than her biological gender unless legally required to do so. (See Doc. No. 1 at ¶¶ 27, 28).

As to allegations of harm, the Complaint states that Doe has legitimate **concerns** regarding her child's risk of transitioning (emphasis supplied). Doe has allegedly found her child viewing online videos related to transitioning and has noted that her child has been spending time with a new friend group that allegedly contains children who identify as transgender or are socially transitioning. (See Doc. No. 1 at ¶¶ 34-36). The Complaint further supports the speculative nature of future harm by stating that "Doe is **concerned that if her child does begin exhibiting signs of gender confusion** of gender dysphoria, the school will immediately begin affirming her before Doe knows and can take steps to help her child obtain appropriate medical care." (emphasis added) (See Doc. No. 1 at ¶ 37). The speculative nature of Plaintiff's Complaint demands dismissal of this improvident lawsuit.

### IV.     STANDARDS OF REVIEW

A challenge to this Court's subject matter jurisdiction is determined pursuant to Federal Rule of Civil Procedure 12(b)(1). Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). A motion to dismiss pursuant to Rule 12(b)(1) may attack subject-matter jurisdiction facially or factually. Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack does not dispute the facts as alleged in the complaint, id., and therefore essentially applies the same standard as Rule 12(b)(6), see Severa v. Solvay Specialty Polymers USA, LLC, 524 F. Supp. 3d 381, 389 (D.N.J. Mar. 10, 2021) (citing In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)). A factual attack, on the other hand, challenges the allegations by which jurisdiction is asserted, permitting the Court to weigh evidence outside the pleadings and placing a burden of proof on Plaintiff to demonstrate that jurisdiction indeed exists. See Davis, 824 F.3d at 346.

"In a Rule 12(b)(6) Motion, the court evaluates the merits of the claims by accepting all allegations in the Complaint as true, viewing them in the light most favorable to the plaintiff, and determining whether they state a claim as a matter of law." Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79. Second, the Supreme Court emphasized that "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679.

## V.     ARGUMENT

### A. The Speculative Nature and Lack of Concrete Harm Requires Dismissal of Plaintiff's Complaint

Count I of Plaintiff's Complaint purports to assert a claim against the School District for a violation of Doe's Fourteenth Amendment fundamental liberty interest in making child-rearing decisions. (See Doc. No. 1 at ¶ 40).   Article III of the Constitution requires that plaintiffs have standing to assert their claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, (1992). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)

Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Id. In the pleading stage, as is the case here, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." Id. To show injury in fact, a

plaintiff must demonstrate that he or she has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not just conjectural or hypothetical.

The particular element of injury in fact requires a plaintiff to demonstrate that he or she is affected in a personal and individual way. The concrete element requires that the injury be real, and not abstract. With regard to the injury-in-fact prong, the injury must be "actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan, 504 U.S. 555 at 560 (1992). That "actual or imminent" is disjunctive is critical: it indicates that a plaintiff need not wait until he or she has *actually* sustained the feared harm in order to seek judicial redress but can file suit when the risk of harm becomes imminent. Clemens v. ExecuPharm Inc., 48 F.4th 146 (3d Cir. 2022). The Supreme Court has recently explained that concreteness turns on whether the alleged injury has a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts. TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).

Examples of concrete harms include more traditional physical and monetary injuries and intangible injuries like harm to reputation. The Court further limited concrete injuries to something more than mere statutory violations. Id. A "concrete" injury must be "*de facto*"; that is, it must actually exist. *See* Black's Law Dictionary 506 (10th ed. 2014). The Supreme Court has stated that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term — 'real,' and not 'abstract.'" Spokeo at 338. Here, the specter of a threat to Doe's ability to "raise their child without undue state interference" can certainly not be found to rise to the level of concrete, particularized and imminent.

Document Number: 376840
Matter ID: 10787.239

Plaintiff's Complaint attempts to allege that AR 103(B) harms parent's liberty interest by "(i) failing to provide parents with notification regarding the mental health and well-being of their children, including the life-altering decisions to change one's gender (ii) secretly submitting children to psychological and mental evaluations by government psychologists and officials, (iii) secretly subjecting children to interrogation by a team of government officials about their parents religious and political beliefs regarding, among other things, gender dysphoria and (iv) secretly providing medical and psychological care by government approved psychologists and medical professionals to a child to "assist" a child in making the life-altering decision to change one's gender." (See Doc. No. 1 at ¶ 47). All of these alleged harms fail to rise to the level of concrete or imminent for Article III standing determination purposes. Here, the specter of the a threat to Doe's ability to Doe's ability to "raise their child without undue state interference" can certainly not be found to rise to the level of concrete, particularized and imminent harm. Plaintiff's alleged harms fail to rise to the level of concrete or imminent for Article III standing determination purposes.

Count I must fail the concreteness prong of the test, as none of them have yet occurred and no harm has befallen Plaintiff Doe. Indeed, Plaintiff Doe has not alleged that any of these harms have befallen her, or that any of the "secret government evaluations or interrogations" have been conducted on her child. Instead, Doe admits that she is merely worried about her daughter's gender identity as her daughter has viewed "videos related to transitioning, videos of transgender individuals advocating transitioning,

and videos on sexuality," as well as spent time with friends that allegedly "identify as transgender or who are socially transitioning."[2]

Additionally, and alternatively, Count I must fail the actual or imminent prong of the Article III test for standing as none of the alleged harms in the count are imminent. None of these harms occur without Doe's daughter expressing interest in transitioning, and certainly it would be outright illogical to conclude that a student at any educational level watching videos that relate to transitioning genders and spending time with other individuals that identify as transgender or are in the process of socially transitioning is "imminently" going to transition themselves. There is no allegation in Plaintiff's Complaint that Doe's daughter is a transgender individual or that they are in the process of transitioning or desire to do so; rather, the Complaint contains hypothesis derived from unfounded assumptions about a child's search histories and socializing with a new group of peers.

---

[2] While not binding authority, two cases have been decided in other jurisdictions with strikingly similar facts. Both cases resulted in a Motion to Dismiss being granted for a lack of Plaintiff standing. In *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622 (4th Cir. Ct. App. Aug. 14, 2023), parents of students initiated suit challenging a policy enacted by the school board that allowed the development of gender support plans for students. The Court held that Plaintiffs lacked standing as the parents did not allege that any of their children had gender support plans, nor did they allege facts that indicated impending injury or a substantial risk of harm. Similarly, in <u>Doe v. Madison Metropolitan School District,</u> 976 N.W.2d 584 (Wi. 2022), several parents initiated suit claiming that the school district's policy providing support for transgender, non-binary, and gender expansive students violated parental rights and religious freedoms by allowing students to use names and pronouns different from those they were assigned at birth without providing parental notification. The Circuit Court dismissed the complaint for a lack of standing, as there had been no actual injury to date to any parent party and the parent failed to show why the policy would cause "even a trifling injury."

Document Number: 376840
Matter ID: 10787.239

There has been no concrete harm and there exists no imminent harm. Plaintiff's asserted injuries are based on the belief that one day AR 103(b) may interfere with the upbringing of their child. Reliance on speculative acts precludes a finding of standing. Subsequently, this Court lacks subject matter jurisdiction over the instant matter and Plaintiff's Complaint requires dismissal.

### B. There Exist No Private Right Of Action To Support Count II Of Plaintiff's Complaint And Should Be Dismissed Pursuant To Fed.R.Civ.P. 12(B)(1)

Count II of Plaintiff's Complaint similarly fails, as this Court again lacks subject matter jurisdiction as there exists no private right of action. Plaintiff's Complaint alleges that "20 U.S.C. § 1232h confers an individual right on parents to control whether their child will be subject to such evaluations and examinations by requiring the School District to obtain express written consent from a parent before performing them." (See Doc. No. 1 at ¶ 53). To the contrary, the PPRA requires the educational entity to take certain action in seeking consent of parents.

Under FERPA's companion law, the PPRA, a school district that receives funds under any applicable program must adopt several policies regarding surveys of students, instructional materials, physical examinations, and personal information used for marketing. Parents must be notified of these policies at least annually at the beginning of the school year and within a reasonable time after any substantial change to the policies. 20 U.S.C. § 1232h(c)(2)(A). The statute at issue does not confer a private right of action. The statute's notice provisions do not create rights enforceable under 42 U.S.C.S. § 1983 because the provisions contained no rights-creating language, have an aggregate rather than individual focus, and served primarily to direct the United States

Secretary of Education's distribution of public funds to educational institutions. Gonzaga Univ. v. Doe, 536 U.S. 273, 276, 122 S. Ct. 2268, 2271, 153 L.Ed.2d 309, 316 (2002) In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the federal government to terminate funds to the state. Unless Congress speaks with a clear voice and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement by 42 U.S.C.S. § 1983.

Plaintiff has failed to identify a private right of action. Plaintiff's action under Count II must be dismissed with prejudice.

### C. Count II of Plaintiff's Complaint Also Fails for Lack of Standing

In the alternative, should this Court find it has jurisdiction to review claims under PPRA, Plaintiff again lacks standing. Plaintiff once again mischaracterizes the role of the PPRA in an attempt to obfuscate the otherwise clear lack of harm in the instant matter.

PPRA popularly known as the Hatch Amendment, states that no student shall be required, as part of any applicable program, to submit to psychiatric or psychological examinations, testing, or treatment, in which the primary purpose is to reveal information concerning seven expressed categories. 20 U.S.C.S. § 1232h(b). PPRA requires local authorities to develop policies to protect student privacy. 20 U.S.C. § 1232h(c). The PPRA restricts the release of "personal information," as that phrase is defined in 20 U.S.C. § 1232h(c)(6)(E), when the personal information is collected from

students for the purpose of marketing or selling the information. See 20 U.S.C. § 1232h(c)(1)(E) and (F)(i), (c)(2)(C)(i), and (c)(4)(A).

The relevant section of § 1232h is section (b) which states, in its entirety, that:

> "No student shall be required, as part of any applicable program, to submit to a survey, analysis, or evaluation that reveals information concerning -- (1) political affiliations; (2) mental and psychological problems potentially embarrassing to the student or his family; (3) sex behavior and attitudes; (4) illegal, anti-social, self-incriminating and demeaning behavior; (5) critical appraisals of other individuals with whom respondents have close family relationships; (6) legally recognized privileged or analogous relationships, such as those of lawyers, physicians, and ministers; or (7) income (other than that required by law to determine eligibility for participation in a program or for receiving financial assistance under such program), without the prior consent of the student (if the student is an adult or emancipated minor), or in the case of an unemancipated minor, without the prior written consent of the parent."

The PPRA clearly states that "no student shall be **required** to submit to . . . without the prior written consent of the parent." (emphasis added)

Responding to students seeking or inquiring as to the nature of AR 103(B), puts the District in an entirely neutral role in allowing students to express their needs or concerns regarding gender identity. AR 103(B) sets guidelines for how these issues are to be handled whenever the students bring them to the District; it does not require that students undergo evaluations or submit to surveys without their parent or legal guardian's consent. Thus, the alleged harms in Count II of the Complaint are (at best) conjecture, as a violation of § 1232h only occurs if students are forced to submit to one of the promulgated surveys or analyses. Given this analysis, Count II also fails to meet the standards of concreteness and imminence that are required by Article III. Count II must fail as Doe's child has done nothing to trigger protocols governed by AR 103(B), and thus

none of the alleged injuries have occurred. As the harms alleged have not occurred, they are not concrete, having in no way resulted in cognizable injury to Plaintiff Doe.

Count II also fails as the harms alleged are not imminent. Plaintiff sets forth no evidence to support the claim that their daughter will eventually express interest in transitioning genders, stating only that she has viewed "videos related to transitioning, videos of transgender individuals advocating transitioning, and videos on sexuality," as well as spent time with friends that allegedly "identify as transgender or who are socially transitioning."

Plaintiff has failed to show that she has suffered, or is at a substantial risk of suffering, an injury in fact that would permit it to pursue any such claims.

**D. Motion to Dismiss Count II of Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6).**

The United States Supreme Court has held, in order to survive a 12(b)(6) motion, a complaint need only provide sufficient factual allegations to raise a right to relief above the speculative level. Twombly, p. 544  The Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint not entitled to the assumption of truth; and (3) determine whether any well-pleaded factual allegations contained in the complaint plausibly give rise to an entitlement to relief. A complaint is properly dismissed where the factual content in the complaint does not allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Santiago v. Warminster Twp. 629 F.3d 121, 130 (3d Cir. 2010). "[T]he failure to raise a right to relief above the

speculative level is the very definition of insufficient pleading." Phillips v. Redkey Town Bd., 2017 U.S. Dist. LEXIS 130183, 2017 WL 3503273 (N.D. Ind. 2017) at *3 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Nowhere in AR 103(B) is the District required to subject a student to an evaluation or analysis, as AR 103(B) functions only after disclosure of transgender status to a District staff member. Count II of Plaintiff's Complaint fails to satisfy the elements necessary for the finding of a sufficient complaint, namely failing to plead factual allegations that plausibly give rise to an entitlement to relief. Count II erroneously alleges that §1232h bars the School District from submitting a student to an analysis or evaluation that reveals information concerning, among other things, (a) the political affiliations or beliefs of the student or the student's parents, (b) mental or psychological problems of the student or student's family, (c) sexual behavior or attitudes, (d) critical appraisals of other individuals with whom the student has a close family relationship, and (e) religious practices or beliefs of the student or student's parents without the parent or legal guardian's written consent (See Doc. No. 1 at ¶ 52).To the contrary, the language of §1232h states that a student shall not be required to submit to any of the aforementioned analyses or evaluations without the parent or legal guardian's written consent.

This distinction is critical, as students are still able to submit to these analyses and evaluations if they so desire to. Nowhere in AR 103(B) is the District required to subject a student to an evaluation or analysis, as AR 103(B) functions only after disclosure of transgender status to a District staff member. To the contrary, it states that "Upon notification by a student, parent/guardian, or representative that a student is undertaking, planning to undergo, or has completed a gender transition, the school will

Document Number: 376840
Matter ID: 10787.239

15

promptly inform the notifying individual and the student of **the right to** request a student support team consisted of appropriate school staff." (emphasis added)

Count II fails to contain any well pleaded factual allegations that show AR 103(B) results in a violation of 20 U.S.C. § 1232h. As such, it fails to meet the sufficiency of complaint standards under Fed. R. Civ. P. 12(b)(6) and must be dismissed. "Plaintiff's entire lawsuit is premised on a speculative chain of possibilities, including future choices made by individuals who have not yet been identified, indeed who cannot yet be identified because they have not acted, and they might never act" See, <u>Parents Protecting Our Child, UA v. Eau Claire Area Sch. Dist.</u>, 657 F. Supp. 3d 1161, 1164 (W.D. Wis. 2023)(granting dismissal on lack of standing)

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Honorable Court grant its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

RESPECTFULLY SUBMITTED,
MAIELLO BRUNGO & MAIELLO, LLP

By:<u>/s/Christina L. Lane</u>
Christina L. Lane, Esquire
Pa I.D. # 83677
cll@mbm-law.net

Krisha A. DiMascio, Esquire
Pa I.D.# 306749
kad@mbm-law.net

424 South 27th Street, #210
Pittsburgh, PA   15203
(412) 242-4400

GRB LAW

Document Number: 376840
Matter ID: 10787.239

Jaime N. Doherty, Esquire
Pa. Id #89402
jdoherty@grblaw.com

Lisa M. Seifert, Esquire
Pa. Id. #208345
lseifert@grblaw.com

525 William Penn Place, Suite 3110
Pittsburgh, PA 15219
(412) 281-0587


Attorneys for Pine-Richland School District

Document Number: 376840
Matter ID: 10787.239

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this ____ day of _____, 2024, a true and correct copy of the foregoing **Brief in Support of Motion to Dismiss** was electronically filed with the Clerk of Courts via the CM/ECF system, which will send notification of such filings via e-mail to the following counsel of record:

      Walter S. Zimolong, III, Esquire
      James J. Fitzpatrick, III, Esquire
      *Attorneys for Plaintiff Jane Doe*

      Nicholad R. Barry
      America First Legal Foundation

By: */s/ Christina L. Lane*
     Christina L. Lane, Esquire
     Krisha A. DiMascio, Esquire

(*Attorneys for Defendant Pine Richland School District*)