IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, | ) Civil Action No. 2:24-cv-00051-WSS |
| Plaintiff, | ) Honorable William S. Stickman IV |
| v. | ) |
| PINE-RICHLAND SCHOOL DISTRICT, | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFF'S PRELIMINARY INJUNCTION

NOW COMES Defendant Pine-Richland School District (hereinafter referred to as "the District") by and through their counsel Christina L. Lane, Esquire, Krisha A. DiMascio, Esquire, the law firm of Maiello, Brungo & Maiello, LLP, Jaime Doherty, Esquire and Lisa Seifert, Esquire of GRB Law and hereby submit the following Memorandum of Law, which sits in opposition to Plaintiff Jane Doe (hereinafter referred to as "Plaintiff") Motion for a Preliminary Injunction:

I.     FACTS

    A.   AR 103(B)

In July of 2017, the District, through its Board of School Directors, created Administrative Regulation 103(B), as the product of a confidential settlement of prior litigation initiated in the matter of <u>Evancho v. Pine-Richland School District</u>, Docket No. 2:16-cv-01537-MRH (Filed

October 6, 2016, W.D. Pa.).[1] AR 103(B) was designed to provide guidance and serve as a resource for its students and their parents regarding issues related to gender and gender identity. See, AR 103(B), ¶ B, attached hereto as Exhibit A. AR 103(B) provides its students and their parents support to help them "achieve their maximum potential through programs in the schools regardless of race, color, age, creed, religion, sex, sexual orientation, gender or gender identity…" Id., at ¶ A. Ordinarily, many students, including those enrolled in the District begin the process of living openly in a manner consistent with their gender identity under the cloak of considerable, if not complete, privacy. Id., at ¶ E. Parents and guardians are generally aware of their child's development, obviating their need for notification related to their child's gender identity or transition; however, the District recognizes that there are times when informing parents of such matters carries with it particular and significant risks to the student, including physical/emotional abuse, abandonment, and even their removal from the home. Id.[2]

Mindful of those risks, upon request of a student desirous of beginning the process of living openly in a manner consistent with their gender identity, the District offers students the assistance of a Student Support Team. This Support Team is a resource available to any student who may have questions or concerns about issues related to gender identity and expression. Id., at ¶ F. Disclosure of a student's gender identity is thoroughly addressed in Part D of AR 103(B), which

---

[1] In the August 4, 2017 Consent Judgment that ended the *Evancho* litigation, The Honorable Mark R. Hornak declared that the "Court retains jurisdiction" over the parties for purposes of interpreting, enforcing, and modifying the Consent Judgment. Therefore, should this Honorable Court be inclined to grant Plaintiff's request to eliminate AR 103(B), the Coordinate Jurisdiction Rule may necessitate Judge Hornak's involvement, as "…judges of coordinate jurisdiction shall not overrule the decisions of another judge." Walker v. United States, 1900 Us. Dist. LEXIS 3420 (W.D. Pa., March 19, 1990).

[2] Transgender adolescents exhibit disproportionate levels of mental health problems, psychological, physical and sexual abuse compared to cisgender adolescents. Thoma, Rezeppa, Choukas-Bradley, Salk, Marshal. "Disparities in Childhood Abuse Between Transgender and Cisgender Adolescents." National Institute of Health. August 2021. https://pubmed.ncbi.nlm.nih.gov/34226247/

375733, 10787.239

states, in part, that "transgender and gender-expansive student have the right to discuss and express his or her gender identity openly and decide when, and with whom, and how much to share private information. Id., at ¶ D.  The fact that a student chooses to disclose his or her transgender status to [the] District staff or other students or staff does not authorize [the] District staff to re-disclose that information." Id.  Furthermore, to ensure the safety and well-being of students, the District's personnel are not to disclose a student's transgender status to another or others, including the student's parents or guardians or other personnel of the District, unless are legally required to do so or upon the authorization of the student. Id.  As AR 103(B), Part E, explains that not all students have a safe, nurturing, and welcoming home environment that allow them to openly disclose and express their gender identity and transgender status that AR 103(B) contemplates. (See Thoma, supra.).  AR 103(B) has been available for public review on the District's website since its implementation.[3]

## B.  JANE DOE[4]

Jane Doe ("Plaintiff") is the parent of a student of the District.  Declaration of Jane Doe, ¶ 1. Plaintiff claims to have concerns that their child might be having some "gender identity issues" based upon recent behaviors that Plaintiff attributes to her child's viewing of online videos and recent socializing with a different peer group.  Id., at ¶¶ 2-4. However, by Plaintiff's own admission, her child's watching online videos and making new friends constitute the sole basis of her worries about what she perceives to be her child's "gender identity issues."  Plaintiff now

---

[3] https://www.pinerichland.org/cms/lib/PA01001138/Centricity/domain/1355/policies_and_ars/AR103B.pdf

[4] Prior to the submission of this Memorandum, undersigned counsel became aware of Jane Doe's identity subject to a Non-Disclosure Agreement with counsel for the Plaintiff; such an agreement was necessary for the District to prepare its Memorandum and other pleadings.  Nonetheless, the District fully intends to preserve Doe's anonymity at this stage of the litigation and shall refer to Plaintiff as either "*Plaintiff*", "*Jane Doe*" or "*Doe,*" unless otherwise expressly referenced.

comes before this Court with the imaginary and hypothetical concern that, should her child express "more pronounced" signs of gender identity issues, the District will immediately provide gender affirming care, even though by Plaintiff's own admission, no evidence exists that Plaintiff's child raised issues or questions about gender identity to a single District employee. Id., at ¶ 5.

On the precipice of the 2023-2024 school year, the District received Plaintiff's written demand that their child not be referred to any mental health professional or social worker for evaluation without first obtaining Plaintiff's express written consent. Id., at ¶ 6. Notably, Plaintiff's August, 2023 also included the demand that Plaintiff's child be excused from various topics of school instruction, citing various sources as the grounds for such demands, including "Private Information" pursuant to "United States Code 1232(h)[5]" and "Research Based" education not previously approved by the Institutional Review Board (IRB).[6]

As set forth in her Complaint, Plaintiff's recounts interactions with District personnel includes her demand to be notified by the District within three days should her child express to the District any gender identity or gender dysphoria issues. (See Doc. No. 1 at ¶24).

Tellingly, Plaintiff's pleadings substantially and perversely mischaracterize AR 103(B), including as follows:

    a. Prohibiting the District personnel from disclosing a student's transgender status to a parent or guardian;

---

[5] Believed to be referring to 20 U.S.C. § 1232(h) – Protection of Pupil Rights.
[6] It is believed Plaintiff is referring to the Institutional Review Board that speaks to protecting the welfare, rights and privacy of human subjects in scientific testing. https://research.oregonstate.edu/irb/what-institutional-review-board-irb

  b. Requiring the District to engage in a "secret" psychological evaluation of the student, conducted by government psychologists, who assist the student in transitioning to a new gender;

  c. Stating that the District shall[7] provide a "Gender Transition Team" to the student; and

  d. Requiring that the "Gender Transition Teams" work to assist any student regardless of age in his or her transition without any involvement of the student's parents or guardians and without notifying the parents;

(See Doc. No. 1 ¶¶ 12, 18, 20, 21).

  To the contrary, AR 103(B) states explicitly that "[r]elevant school staff, such as the building principal, guidance counselor, and school psychologist, will work actively and immediately to discuss disclosure to parents/guardians given their legal rights and the importance of collaboration between the school staff, student, and parents/guardians." AR 103(B), ¶D. AR 103(B) contains absolutely no reference to a "Gender Transition Team", nor does it provide for a "secret psychological evaluation." AR 103(B), ¶ D.

  Plaintiff further contends that the District told Plaintiff that, pursuant to AR 103(B), it would not notify Plaintiff if her child asked to be addressed by different pronouns, a different name, or otherwise exhibited behavior consistent with what Plaintiff characterizes as gender dysphoria or the desire to transition to a gender other than their biological gender unless legally required to do so. (See Doc. No. 1 at ¶¶ 27, 28). Finally, in a perfunctory attempt to show that she suffered any actual harm, Plaintiff alleges legitimate concern that her child is at risk of

---

[7] It would appear Plaintiff is interpreting "shall" to mean "must."

transitioning. The District reminds the Court that the sole basis for Plaintiff's supposed "legitimate concern" is her child's viewing of online videos on the topic of transitioning, and noticing that her child has new friends, some of whom, according to Plaintiff, allegedly identify as transgender or are socially transitioning. (See Doc. No. 1 at ¶¶ 34-36).  However, Plaintiff's harm is purely speculative, anticipatory, and based on her own conjecture, which Plaintiff openly admits in her Complaint with her averment that "Doe is **concerned that *if* her child *does* begin exhibiting signs of gender confusion** or gender dysphoria, the school will immediately begin affirming her before Doe knows and can take steps to help her child obtain appropriate medical care." (emphasis added) (See Doc. No. 1 at ¶ 37) (emphasis added).  Thus, Plaintiff's fears are anything but immediate; rather they purely imaginary at this juncture, and nevertheless, are far too remote at this time to grant Plaintiff her requested relief.  Instead, for the reasons set forth below, Plaintiff's relief must be denied.

## II.     ARGUMENT

### A. <u>Standard of Review for a Preliminary Injunction</u>

A preliminary injunction is relief that is extraordinary in nature, and its granting should occur in limited circumstances. <u>Kos Pharms., Inc. v. Andrx Corp</u>., 369 F.3d 700, 708 (3d. Cir. 2004). A movant seeking a preliminary injunction must establish four factors to be successful: that (1) they are reasonably likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equity tips in their favor; and (4) an injunction is in the public interest. <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 176 (3rd Cir. 2017). Should a movant be successful in the first two factors, then the court "considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the request preliminary relief. <u>Reilly</u>, 858 F.3d at 179.

Furthermore, a party seeking a mandatory preliminary injunction that would alter the status quo bears a particularly heavy burden in its request. <u>Acierno v. New Castle Cnty.</u>, 40 F.3d 645, 653 (3d Cir. 1994). The party seeking to alter the status quo must meet a higher standard of showing irreparable harm in the absence of an injunction. <u>Bennington Foods, LLC v. St. Croix Renaissance Group, LLP</u>, 528 F. 3d 176, 179, 49 V.I. 1176 (3d Cir. 2008). Thus, Plaintiff must show they would be irreparably harmed unless the status quo was changed, and that they are likely to succeed on the merits of their case, as well as public interest being in their favor in addition with the granting of the injunction being in their public interest.

375733, 10787.239

### B. Plaintiff's Burden of Proof for a Preliminary Injunction

As a matter of course, the movant must show the tribunal that all four factors favor preliminary relief. <u>AT&T v. Winback & Conserve Program, Inc.</u>, 42. F.3d 1421, 1427 (3d Cir. 1994). For preliminary injunctions related to constitutional rights, a movant must necessarily first demonstrate a likelihood of success that a fundamental right is being infringed. <u>Goodman v. Illinois Dept. of Fin. & Prof'l Regulation</u>, 430 F. 3d 432, 438 (7th Cr. 2005). If the movant makes such a showing, the burden then falls to the respondent (the government) to justify its restriction under the appropriate level of scrutiny. <u>Thalheimer v. City of San Diego</u>, 645 F.3d 1109, 1116 (9th Cir., 2011). If respondent (again, the government) succeeds in justifying the restriction, then the motion for a preliminary injunction fails because there is no likelihood of success on its merits. And even if the moving party prevails on that prong, it still bears the burden of showing irreparable injury. <u>Id</u>.

Said differently, and in this instance, Plaintiff must show that they are reasonably likely to succeed in proving that the District infringed on Plaintiff's constitutional rights. Should Plaintiff make that showing, the District then has the burden to justify its actions under the appropriate level of scrutiny. Plaintiff would then further have the burden of showing irreparable harm in the absence of preliminary relief. <u>Id</u>.

### C. Plaintiff's Claim for a Preliminary Injunction

**1. There Is No Irreparable Harm Done to Plaintiff by AR 103(B).**

The Plaintiff alleges there will be irreparable harm done to them without the granting of the preliminary injunction requested in their motion and outlined in their Memorandum; however, the law as stated does not support such a claim and neither do the facts as alleged. Furthermore,

and to the contrary, the facts and law as alleged support this Honorable Court to deny Plaintiff's request for the District's reasons set forth more fully below.

While the United States Supreme Court has indeed often affirmed the right of parents to control the upbringing of their children, the Court has also recognized that that right is not absolute in a school setting and that schools may impose regulations deemed reasonable. *Meyer v. Nebraska*, 262 U.S. 390, 402 43 S. Ct. 625, 67 L. Ed. 1042 (1923) ("The power of the state to compel attendance at some school and to make reasonable regulations for all schools…is not questioned"); *Wisconsin v. Yoder*, 406 U.S. 205, 213-14, 92 S. Ct. 1526, 32 L.Ed. 2d 15 (1972) (recognizing the power of the state "to impose reasonable regulations for the control and duration of basic education," which must be balanced "when it impinges on fundamental rights"). This principle has been duly recognized by the Third Circuit in that while the "Supreme Court has never been called upon to define the precise boundaries of a parent's right to control a child's upbringing and education," nonetheless it remains that "the right is neither absolute nor unqualified." *C.N. v. Ridgewood Bd. Of Educ.*, 430 F.3d. 159, 182 (3d Cir. 2005). And even though the Supreme Court has pronounced an-almost plenary pronouncement concerning familial privacy, the right in a school/educational setting is qualified where the "state's power is custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults." *Id*. (*quoting Gruenke v. Seip*, 225 F. 3d 290, 304 (3d Cir. 2000)).

Particularly dispositive is the fact that in the past the state had been **requiring or prohibiting** some activity, such as when a public health center provided a minor with emergency contraceptive ("Plan B" pills) without parents' knowledge or consent, the state was found not to have violated substantive due process rights. *Anspach ex. rel. Anspach v. City of Phila. Dept. of*

*Pub. Health,* 503 F.3d 256 263-264 (3d Cir. 2007) (emphasis added). The Third Circuit reasoned that the state was not constraining/compelling any action by parents, in contrast to issues such as in *Wisconsin v. Yoder*, 406 U.S. 205, 213-214, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) (a law prohibiting Amish parents from withdrawing children from school after a certain age violated both the parents First Amendment under the Free Exercise Clause and substantive due process rights).

Stated quite plainly, AR 103(B) does not require any affirmative, required or (most importantly) compelled behavior on the part of any student. Instead, AR 103(B) is invoked *solely and only at the initiation* of a student of the District. If a student of the District wishes to keep their gender identity private and does not avail themselves of AR 103(B), there is no action taken, nor there is *never* any action done, by the District. Thus, Plaintiff is misguided when they stated that AR 103(B) "requires" a student meet with a support team – the support team as outlined in Part F is available for students who avail themselves of AR 103(B) – it is not, nor has it ever been, a requirement of any kind of any or all students of the District. Plaintiff couches their claim in some sort of parental providence being usurped by AR 103(B) when in truth, no such right is being obviated - Plaintiff wants this Honorable Court to believe that the District is standing *in loco parentis vis a vie* their child's gender identity, but in truth AR 103(B) only provides services for any student at the District should they want them – there is no compelling action on the part of the District mandating the student to partake. AR 103(B) does not require anyone to engage in activity. It does not prohibit anyone from engaging in an activity. It directs the District to refer to students by preferred gender identity without requiring the District to obtain consent or to notify parents of that student in question. Therefore, the Plaintiff's claims fail for relief and their request must be denied.

375733, 10787.239

### 2. Plaintiff Does Not Have a Reasonable Likelihood of Success on The Merits of Their Case

Plaintiff further argues that AR 103(B) has an inviolate interference with their Fourteenth Amendment rights and thus has a reasonable likelihood of success on the merits of their case concerning their request for an injunction. However, Plaintiff's faith in their arguments is misplaced and their likelihood for success is quite unlikely.

To begin, and as discussed above, AR 103(B) does not require any action be done on the part of the student by the District. In contrast, if Plaintiff were to have their way, this Court would have to impose on the District a constitutional obligation on the District (a state actor) to contact the parents of a minor who requests to be recognized by a different gender identity, notwithstanding how that minor feels concerning their parents being notified of such a development. *See Anspach*, at 503 F.3d 262. Plaintiff has, so far as the factual records shows, not asserted nearly enough by their own admission, to warrant an extraordinary remedy such as a preliminary injunction – viewing videos and a new social/peer group is not nearly enough to have the District pause its administrative process on its entire student body, even if it means the impugning on the perceived liberty interest of one parent – as the liberty interest of the parent is too amorphous at this point.

Plaintiff relies heavily on *Gruenke v. Seip*, 225 F.3d 290 (3d Cir. 2000) as a primary illustration why this Honorable Court should rule in their favor. *Gruenke* featured a high school swim coach who exerted pressure on a student to take a pregnancy test outside the knowledge and consent of the student's parents. *Id*., at 295-297. The student herself also expressed her disapproval in the coach's actions and that he should "mind his own business." *Id*., at 306-307.

There, the Third Circuit found that the student's parents had found that an "unconstitutional interference with familial relations" had occurred. *Id*.

Unlike in *Gruenke* though, there is no establishment on the part of Plaintiff that the District has engaged in any type of intrusiveness with their child; to the contrary, AR 103(B) (once again) is initiated completely at the behest of the student and never at the whim or mandate of any personnel of the District. The District neither prevents, discourages, coerces or compels a student to avail themselves to AR 103(B), nor has it specifically done so with Plaintiff's child, nor has Plaintiff made any factual or substantial assertion that that has been done with their child *nor with any other child in the District*. The record at present is totally bereft of facts suggesting that Plaintiff in any way, shape or form was or has been compelled by the District to participate or proclaim any sort of any gender identity issue in any way under AR 103(B). Thus, their claim of a likelihood of success must fail.

Plaintiff further argues that children do not have privacy rights when it comes against the rights of their parents; this is simply not true. *See* 20 U.S.C. §1232g; 34 C.F.R. §§ 99.00, *et. seq.* It is a student's right to limit what kind of, and with whom, information as to their sexual orientation and gender identity may be shared. *C.N. v. Wolf*, 410 F. Supp. 2d, 894, 903 (C.D. Cal. 2005) (*See also Anspach, supra.*). Ergo, while Plaintiff can allege at great length that they will be successful in their endeavor for an injunction due to a violation of their parental rights – the plain fact is that by statute, Plaintiff's parental rights are not being usurped and, contrary to what is alleged in Plaintiff's pleadings, there exists nothing about AR 103(B) that is secretive; it was published, subject to notice and comment, voted upon, adopted and has remained posted on the District's website since its adoption in 2017. Furthermore, Part D of AR 103(B) discusses that

disclosure of a student's gender identity to their parents is an issue/topic that may be discussed by District personnel with the student. See AR 103(B), ¶ D. Thus, to claim any subject of AR 103(B) is "secretive" is self-serving, disingenuous and a bad-faith performative argument on the part of Plaintiff. Thus, Plaintiff's extraordinary claim for an injunction should be denied.

### 3. The Balance of Harms and Public Interest Favor Denying an Injunction

Plaintiff finally alleges that the balance of harms favors them and proceeds to speak on how professionals with limited training "may cause harm" to Plaintiff's child. *See* Plaintiff's Memorandum, Pg. 18. By Plaintiff's own admission, they are premature to the courthouse steps and that the harm is too ethereal to them, whilst enjoining AR 103(B) would be all too real of a harsh and cruel punishment for students of the District, thus Plaintiff's request must be denied at this juncture as well.

Even where a student is diagnosed with a mental health condition related to gender identity, a school's policy did not constitute "treatment" that interferes with a parent's right to make medical decisions because that policy does not actively suggest the student change names and pronouns – the school merely acknowledges the student if they wish to do so on their own. *Wiley v. Sweetwater County School District No. 1. Board of Trustees*, 2023 U.S. Dist. LEXIS 113818, 2023 WL 4297186 at 13-14 (June 30, 2023).

Plaintiff argues that leaving AR 103(B) in place runs the risk of potentially harming students at the District in being treated by unqualified mental health professionals. In truth, Plaintiff fails to show an infringement of their rights and that somehow the District is making healthcare decisions on the part of their child on Plaintiff's behalf and without Plaintiff knowing. Not to belabor the point, and at the risk of sounding repetitive, Plaintiff's child, to date, has not

invoked AR 103(B), and in fact, by Plaintiff's own admission in the pleadings, has not expressed any sort of gender identity issues to Plaintiff. Thus, there has been no action taken on the part of the District *vis a vie* AR 103(B) with respect to Plaintiff's child. And, even if there were to be, the actions that would be taken are laid out in AR 103(B) and would (once again) but totally at the initiation of the student. There has been no factual averment that Plaintiff's child has been diagnosed with any sort of mental health diagnosis, but even if there was, AR 103(B) is a passive policy on the part of the District, meaning it is initiated only by the student, and that it does not stand in the shoes of medical decision making on the part of the parents; it merely provides services that a student can avail themselves to, if they so choose, akin to a school nurse.

Finally, the public interest very much favors a denial of the injunction. There are numerous students at the District who (unlike Plaintiff's child) *have* availed themselves to AR 103(B) and very much benefit from the expansive services it provides to them. To enjoin AR 103(B) from functioning would cause a sudden and disruptive rupture in the daily life of an already vulnerable group of students who are currently postured in a difficult period of life. Especially given Plaintiff's naked allegations, bare of any connecting facts of any alleged harm to Plaintiff balanced against the very valid and real harm that would occur if AR 103(B) were to be suspending pending the outcome of Plaintiff's lawsuit, then this Honorable Court is able to see that this injunction should not be granted at its current posture. Plaintiff has not met their burden of proof and their request for relief should be denied at this juncture.

### III. CONCLUSION

For the aforementioned reasons and arguments, the District humbly requests this Honorable Court DENY the preliminary injunction as requested by Plaintiff, and allowing Administrative Regulation 103(B) as promulgated by the Pine Richland School District to continue to stand.

Dated:  March 22, 2024

Respectfully submitted,

| MAIELLO, BRUNGO & MAIELLO, LLP | GRB LAW |
|---|---|
| /s/*Christina L. Lane, Esq.*<br>/s/*Krisha A. DiMascio, Esq.*<br>Christina L. Lane, Esquire<br>PA. I.D. #83677<br>cll@mbm-law.net<br>Krisha A. DiMascio, Esquire<br>PA. I.D. #306749<br>kad@mbm-law.net | /s/ *Jaime N, Doherty, Esq.*<br>/s/ *Lisa M. Seifert, Esq.*<br>Jaime N, Doherty, Esquire<br>PA. I.D. # 89402<br>jdoherty@grblaw.com<br>Lisa M. Seifert, Esquire<br>PA. I.D. # 208345<br>lsiefert@grblaw.com |
| 424 South 27th Street, #210<br>Pittsburgh, PA 15203<br>Phone: (412) 242-4400<br>Attorneys for Defendant,<br>*Pine-Richland School District* | 525 William Penn Place Suite 119<br>Pittsburgh, PA 15219<br>Phone: (412) 281-0587<br>Attorneys for Defendant<br>*Pine-Richland School District* |

375733, 10787.239