**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JANE DOE,

*Plaintiff*,

v.

PINE-RICHLAND SCHOOL DISTRICT,

*Defendant*.

Civil Action No. 2:24-cv-00051-WSS

Honorable William S. Stickman IV

**MOTION OF LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA, AND EDUCATION LAW CENTER PENNSYLVANIA TO FILE BRIEF AS *AMICI CURIAE* IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

NOW COME Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal"), American Civil Liberties Union of Pennsylvania ("ACLU of Pennsylvania"), and Education Law Center Pennsylvania ("ELC-PA") (collectively, "prospective *amici*"), and hereby respectfully move this Court for leave to file the attached brief as *amici curiae* in opposition to Plaintiff's motion for a preliminary injunction (Dkt. 5) and in support of Defendant's motion to dismiss (Dkt. 15).

For the reasons stated in the memorandum that follows, prospective *amici* respectfully ask this Court to grant their motion for leave to file the attached brief as *amici curiae*.

**MEMORANDUM OF LAW**

As part of their missions, prospective *amici* are committed to ensuring that transgender and gender-diverse[1] young people have access to full educational, social, economic, and other

[1] *Amici* use the umbrella term "TGD" to describe a broadly inclusive range of gender identities including those outside the male/female binary as assigned at birth. At times, *amici* also

opportunities, and that their mental and physical well-being are protected. As a result, prospective *amici* have a substantial interest in this litigation and significant expertise in the issues it raises.

**BACKGROUND**

Prospective *amicus curiae* Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal") is the nation's oldest and largest non-profit legal organization committed to achieving full recognition of the civil rights of LGBTQ people and people living with HIV through impact litigation, education, and public policy work. Lambda Legal has long worked to ensure that TGD young people have access to equal educational opportunity in Pennsylvania and across the country. This has included serving as counsel of record or counsel for *amicus curiae* in multiple cases addressing the rights of TGD students. *See, e.g.*, *Roe v. Critchfield*, No. 23-2807 (9th Cir.) (counsel of record); *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc) (counsel of record); *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 522 (3d Cir. 2018) (amicus); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 302 (W.D. Pa. 2017) (counsel of record).

Of particular salience here, Lambda Legal served as counsel for the plaintiffs in *Evancho v. Pine-Richland School District*, 237 F. Supp. 3d 267 (W.D. Pa. 2017), which resulted in the Pine-Richland School District's adoption of Administrative Regulation 103(B)—the very regulation Plaintiff now collaterally attacks in this case. In *Evancho*, Lambda Legal represented three transgender students at Pine–Richland High School who were prevented from continuing to use common student restrooms that conform with their gender identities because of the then-School Board's Resolution 2. On behalf of the students, Lambda Legal was able to secure a preliminary

---

use the term "LGBTQ," a more expansive term referring to lesbian, gay, bisexual, transgender, queer, and other non-heterosexual or gender-diverse people.

injunction after the district court (Judge Hornak) "conclude[d] that the Plaintiffs ha[d] shown a reasonable likelihood of success on the merits of their claim that the District's enforcement of Resolution 2 as to their use of common school restrooms does not afford them equal protection of the law as guaranteed to them by the Fourteenth Amendment." *Evancho*, 237 F. Supp. 3d at 302.

Following months of negotiations, the plaintiffs represented by Lambda Legal and the Pine-Richland School District, represented by its counsel, reached a settlement agreement and consented to entry of a consent judgment. *See* Joint Mot. for Entry of Consent J., *Evancho v. Pine-Richland School District*, No. 2:16-cv-01537-MRH (W.D. Pa. filed Aug. 1, 2017) (Dkt. 93). As part of the Settlement Agreement, the Pine-Richland School District adopted or amended several policies addressing issues pertaining to TGD students at Pine-Richland schools. This included the adoption of Administrative Regulation 103(B) (*see* Dkt. 1-3, Exhibit 1 to Complaint) as well as the amendment of Board Policies 103 and 248 to include nondiscrimination and harassment protections based on "gender or gender identity." In addition, the Consent Judgment permanently enjoined the defendants "from enforcing Resolution 2 or any policy, practice, or custom of the Pine-Richland School District and/or Pine-Richland High School that denies transgender students the access and use of restrooms that match a student's consistently and uniformly asserted gender identity; and taking any formal or informal disciplinary action against transgender students for using the restrooms that match a student's consistently and uniformly asserted gender identity." Consent J., *Evancho v. Pine-Richland School District*, No. 2:16-cv-01537-MRH (W.D. Pa. filed Aug. 4, 2017) (Dkt. 96). Judge Hornak retained jurisdiction of the action "for purposes of enforcement, interpretation or modification of th[e] Consent Judgment." *Id.*

Prospective *amicus* ACLU of Pennsylvania is a nonprofit, nonpartisan, membership organization that serves as an enduring guardian of justice, fairness, and freedom, working to

protect civil liberties and advance equity for all. The ACLU of Pennsylvania's work includes litigation and advocacy on behalf of LGBTQ people, including LGBTQ students in Pennsylvania public schools. The ACLU of Pennsylvania represented transgender-student intervenors who successfully opposed a legal challenge to a school district's policy allowing all students to use bathrooms and locker rooms that aligned with their gender identity. *See Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 527–28 (3d Cir. 2018).

Prospective *amicus* ELC-PA is a nonprofit legal advocacy organization dedicated to ensuring that all Pennsylvania's children have access to a quality public education. For nearly fifty years, ELC-PA has worked to eliminate systemic inequities that lead to disparate educational outcomes, including those based on sexual orientation, gender identity and gender expression. ELC-PA has handled thousands of individual matters and impact cases, and has a history of vigorous advocacy on behalf of LGBTQ students. Through an Inclusive Schools and Honest Education initiative, ELC-PA has responded to requests for assistance and concerns raised in over 30 school districts across the Commonwealth that have created hostile school climates for LGBTQ students, including policies that discriminate against and exclude TGD students from full participation in their schools. ELC-PA is deeply invested in ensuring Pennsylvania schools provide TGD students with a safe environment where they are valued, their individual learning needs are met, and they have equitable opportunities to thrive. Policies like Pine-Richland's Administrative Regulation 103(B) are an important tool in that context.

As such, prospective *amici* have a keen interest in ensuring that Defendant's policies continue to provide TGD students with the respect, support, and resources they need to learn and thrive in school.

## LEGAL STANDARD

Whether to permit amicus participation is "solely within the broad discretion of the district court." *Waste Mgmt. of Pa. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995). "A court may grant leave to appear as an amicus if the information offered is 'timely and useful.'" *Id*. (quoting *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985), *aff'd mem.*, 782 F.2d 1033 (3d Cir. 1986)). "The Third Circuit has said that 'permitting persons to appear in court . . . as friends of the court . . . may be advisable where third parties can contribute to a court's understanding.'" *Avellino v. Herron*, 991 F. Supp. 730, 732 (E.D. Pa. 1998) (quoting *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987)).

"Amicus curiae status is generally granted when: (1) the petitioner has a 'special interest' in the particular case; (2) the petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to a particular outcome in the case." *Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005).

## ARGUMENT

The Court should grant leave for Lambda Legal, Education Law Center, and ACLU of Pennsylvania to file the enclosed *amicus* brief because the prospective *amici* meet all the indicia for *amicus curiae* status.

### 1. *Amici*'s special interest in the case.

Prospective *amici* possess unique and special interests not represented by the parties. All of the prospective *amici*'s missions and work involve advocating for the rights of TGD young people to have access to equal educational opportunity in Pennsylvania and across the country, work that would be impeded by the relief sought by Plaintiff. Indeed, prospective *amici* have

engaged in advocacy and brought forth litigation in Pennsylvania and elsewhere that seeks to promote the very policies that Plaintiff asks this Court to enjoin. In doing so, prospective *amici* represent the interests not of school districts but of the TGD students who would be impacted by the relief sought by Plaintiff.

More specifically, Pine-Richland School District Administrative Regulation 103(B) was adopted as a part of and because of a settlement obtained in *Evancho v. Pine-Richland School District*, in which proposed *amicus* Lambda Legal represented three transgender Pine-Richland students who had been subjected to discrimination based on their sex and transgender status due to an unconstitutional policy adopted by the school board at the time. Here, Plaintiff seeks to collaterally attack the Regulation intended to remedy that discrimination. Indeed, notwithstanding that Plaintiff's complaint is premised on her concerns about Section E of Administrative Regulation 103(B), Plaintiff is asking the Court to enjoin Sections C, D, E, F, G, or H of Administrative Regulation 103(B), all to the detriment of TGD students like those represented by prospective *amicus* Lambda Legal in the *Evancho* case. There can be no more particularized and special interest than protecting the policies secured by prospective *amicus* Lambda Legal on behalf of transgender students in Pine-Richland schools against the Plaintiff's attack.

Furthermore, prospective *amici* bring vast substantive expertise regarding issues affecting TGD students' access to equal educational opportunity, having litigated, advocated, and served as *amici curiae* in numerous related matters. *See*, *e.g.*, *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622 (4th Cir. 2023) (Lambda Legal as amicus curiae); *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018) (ACLU of Pennsylvania as counsel of record for intevenors, Lambda Legal as amicus curiae); Brief of *Amici Curiae*, *Nicole B. v. Sch.*

*Dist. of Philadelphia*, No. 868 C.D. 2018 (Commonwealth Ct. of Pa., filed July 27, 2018) (Education Law Center as amicus curiae).

In sum, prospective *amici* have a special interest in ensuring that the rights of TGD students are represented in the litigation, and prospective *amicus* Lambda Legal has a special interest in protecting Administrative Regulation 103(B), which it secured in a settlement on behalf of Pine-Richland students it represented, against Plaintiff's collateral attack. *See Liberty Res., Inc.*, 395 F. Supp. 2d at 209.

**2. Representation of *amici*'s interests.**

Prospective *amici*'s participation as *amicus curiae* is further warranted because no party directly represents the interests of TGD students who stand to be impacted by the relief sought by Plaintiff.

"Even when a party is very well represented, an amicus may provide important assistance to the court." *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.). "Some amicus briefs collect background or factual references that merit judicial notice. Some friends of the court are entities with particular expertise not possessed by any party to the case. Others argue points deemed too far-reaching for emphasis by a party intent on winning a particular case. Still others explain the impact a potential holding might have on an industry or other group." Luther T. Munford, When Does the Curiae Need An Amicus?, 1 J.App. Prac. & Process 279 (1999). Here, prospective *amici* do most of the aforementioned: the proposed *amicus* brief provides critical background information necessary to properly understand Administrative Regulation 103(B) and the issues in this case; prospective *amici* are entities with particular expertise not possessed by any party to the case; and prospective *amici* expand on points not addressed or only briefly alluded to by the other parties.

Furthermore, "requiring a prospective amicus to undertake the distasteful task of showing that the attorney for the party that the amicus wishes to support is incompetent is likely to discourage amici in instances in which the party's brief is less than ideal and an amicus submission would be valuable to the court." *Neonatology Assocs.*, 293 F.3d at 132. To be sure, here, Plaintiff clearly does not represent the interests of TGD students. To the contrary, Plaintiff is advocating for the enjoinment of policies that benefit TGD students—something that Defendant Pine-Richland confirms. *See* Opp'n. to Prelim. Inj. (Dkt. 17), at 14 ("There are numerous students at the District who (unlike Plaintiff's child) *have* availed themselves to AR 103(B) and very much benefit from the expansive services it provides to them."). And while prospective *amici* appreciate the Defendant Pine-Richland School District's defense in this case, Defendant represents the interests of the school district and does not directly represent the interests of TGD students.

Finally, "denying motions for leave to file an amicus brief whenever the party supported is adequately represented would in some instances deprive the court of valuable assistance." *Neonatology Assocs.*, 293 F.3d at 132.

Prospective *amici* by contrast are experienced civil rights organizations who have advocated, litigated, and fought for the rights of TGD students and policies like Administrative Regulation 103(B). Their interests are not directly represented in this litigation, and even if so, denying their motion for leave to file an *amicus* brief because the party supported is adequately represented would deprive the Court of valuable assistance.

**3. The proposed *amicus* brief provides information that is timely and useful.**

Prospective *amici* "offer[] information that is both timely and useful concerning the rights of nonparties who are affected by this litigation." *Liberty Res., Inc.*, 395 F. Supp. 2d at 209.

For one, prospective *amici*'s brief is timely. It is being tendered before the deadline for Plaintiff's reply regarding her motion for a preliminary injunction, as well as her opposition to defendant's motion to dismiss. Plaintiff thus has ample opportunity to address any of the information or arguments presented in the brief.

For another, prospective *amici*'s brief is useful. Drawing on their rich expertise and years of first-hand experience, prospective *amici* seek to provide the Court with a broad and empirically grounded view of the landscape of TGD youths' lives, the unique challenges they face, and the critical importance of policies that protect TGD students' ability to be themselves and live authentically at school and in all aspects of their lives. They offer this Court insight into the challenges facing TGD youth and the important role that schools and educators play in meeting those challenges. As the attached brief explains in detail, extensive evidence shows that TGD youth face vastly increased and, at times, deadly risks to their health, safety, and security. They often encounter deeply rooted social stigma and hostility, and experience disturbingly high rates of violence, harassment, and other forms of cruelty and discrimination.

Yet research also confirms that supportive school environments can dramatically reduce these risks and hardships and help mitigate their effects. Policies like Administrative Regulation 103(B) ensure that school personnel can be key allies for TGD students, working alongside them to build acceptance in their classrooms, their homes, and their communities. More specifically, policies that ensure that TGD young people retain agency and support in the intensely personal decision of when and to whom to disclose a gender-diverse identity are vital to prevent delay or derailment of TGD students' acceptance by peers and family members.

By providing this Court a perspective on the real-world issues Administrative Regulation 103(B) seeks to address, prospective *amici* provide important context that will prove to assist in

this case "where an issue of general public interest is at stake," *Liberty Res., Inc.*, 395 F. Supp. 2d at 209, aiding the Court's "understanding of the implications of this case from various points of view." *Fed. Trade Comm'n v. AT&T Mobility LLC*, 883 F.3d 848, 852 n.3 (9th Cir. 2018).

Indeed, Lambda Legal, along with others, has filed some version of the proposed brief in other similar cases. *See*, *e.g.*, *Regino v. Staley*, No. No. 23-16031 (9th Cir. filed Jan. 9, 2024) (Dkt. 53-2); *Foote v. Ludlow Sch. Comm.*, No. 23-1069 (1st Cir. filed June 27, 2023) (Doc. 00118024978); *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, No. 22-2034 (4th Cir. filed Jan. 4, 2023) (Doc. 41-1).

**4. Partiality**

"An amicus, of course, is not a party to the litigation and participates only to assist the court." *Waste Mgmt. of Pennsylvania, Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995). But "by the nature of things an amicus is not normally impartial." *Strasser v. Doorley*, 432 F.2d 567 (1st Cir. 1970). And "[w]hile the partiality of an *amicus* is a factor to consider in deciding whether to allow participation, there is no rule that *amici* must be totally disinterested." *Waste Mgmt.*, 162 F.R.D. at 36 (cleaned up). Indeed, the implication that a prospective *amicus* must be totally disinterested in the outcome of the case "seems to be that a strong advocate cannot truly be the court's friend," a suggestion that "is contrary to the fundamental assumption of our adversary system that strong (but fair) advocacy on behalf of opposing views promotes sound decision making." *Neonatology Assocs.*, 293 F.3d at 131. "Thus, an amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend." *Id.*[2]

[2] "The argument that an amicus cannot be a person who has 'a pecuniary interest in the outcome' also flies in the face of current appellate practice. … Parties with pecuniary, as well as policy, interests also appear as amici in our court." *Neonatology Assocs.*, 93 F.3d at 131–32.

Here, prospective *amici* are not partial to Plaintiff or Defendant. Rather, because this case raises issues affecting their interests and those of the students for whom they advocate, prospective *amici* seek to aid the Court by providing the Court with necessary information about the importance of policies like Administrative Regulation 103(B) for TGD students.

**CERTIFICATE OF CONFERRAL**

Counsel for prospective *amici* conferred via email with counsel for Plaintiff and Defendant. Plaintiff does not oppose the relief requested, while Defendant had not responded as of this filing.

**CONCLUSION**

For the foregoing reasons, prospective *amici* respectfully request that the Court grant leave to file the accompanying *amicus curiae* brief in opposition to Plaintiff's motion for a preliminary injunction (Dkt. 5) and in support of Defendant's motion to dismiss (Dkt. 15).

Dated this 2nd day of April 2024.

Respectfully submitted,

/s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan*
**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
ogonzalez-pagan@lambdalegal.org

Karen L. Loewy**
**Lambda Legal Defense and Education Fund, Inc.**
111 K Street N.E., 7th Floor
Washington, DC 20002
Phone: (202) 804-6245
kloewy@lambdalegal.org

Richard T. Ting (PA ID 200438)
Witold Walczak (PA ID 62976)
**American Civil Liberties Union of Pennsylvania**
P.O. Box 23058
Pittsburgh, PA 15222
Phone: (412) 681-7736
rting@aclupa.org
vwalczak@aclupa.org

Maura McInerney (PA ID 71468)
Kristina Moon (PA ID 306974)
Cherann Christine Porter (PA ID 327187)
**Education Law Center PA**
429 Fourth Ave. Suite 1910
Pittsburgh, PA 15219
Phone: (412) 258-2120
kmoon@elc-pa.org

* Admitted *pro hac vice*.
** Motion for admission *pro hac vice* pending.