IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE | : | |
| | : | No.  2:24-cv-00051-WSS |
| Plaintiff | : | |
| | : | |
| v. | : | |
| PINE-RICHLAND SCHOOL DISTRICT | : | |
| | : | |
| Defendant | : | **JURY TRIAL DEMANDED** |

### SECOND AMENDED COMPLAINT

Plaintiff files this second amended complaint and avers as follows.

### Parties, jurisdiction, and venue

1.      Plaintiff Jane Doe ("Doe") is a parent of a student living in the Pine-Richland School District, and a citizen of the Commonwealth of Pennsylvania.

2.      Defendant Pine-Richland School District (the "School District") is a school district organized under Pennsylvania law.

3.      The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 42 U.S.C. § 1983.

4.      Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

### Facts

#### A. Administrative Regulation 103(B)

5.      This case concerns the constitutionality of School District Administrative Regulation 103(B) ("AR 103(B)") under the 5th and 14th Amendments to the United States Constitution. A copy of AR 103(B) is attached at Exhibit "1."

6.    AR 103(B) is an official policy, custom, edict, and practice of the School District.

7.    As AR 103(B) expressly states, "the purpose of this administrative regulation is to provide additional information and direction about gender and gender identity." *Id.*

8.    AR 103(B) states that "[a]ll students" – regardless of age – "have a right to privacy and this right includes the right to keep one's transgender status **private** at school." *Id.* (emphasis added).

9.    According to AR 103(B) disclosing a student's "transgender status" to the student's "parents/guardians . . .may also violate privacy laws, such as the Family Educational Rights and Privacy Act (FERPA)."

10.    AR 103(B) states, "transgender and gender-expansive students have the right to discuss his or her gender identity openly and to decide when, with whom, and how much to share private information." *Id.*

11.    AR 103(B) states, "[t]o ensure the safety and well-being of the student, District personnel should not disclose a student's transgender status to others, including the student's parents/guardians or other District personnel, unless: (1) legally required to do so, or (2) the student has authorized such disclosure." *Id.*

12.    AR 103(B) prohibits School District personnel from disclosing a student's transgender status to the student's parents or guardians. *Id.*

13.    AR 103(B) directs the building principal or staff member designee to "privately ask transgender or gender-expansive students . . . how they want to be

addressed . . . in correspondence to the home, or at conferences with the student's parent/guardians." *Id.*

14.     This effectively requires school personnel, at the request of a student, to use certain pronouns or names with the student at school, but a separate name and pronoun with parents at school or in correspondence sent home.

15.     The School District believes that "notifying a student's parent/guardian about his or her gender identity or transition may be unnecessary." *Id.*

16.     And "in some cases, informing parents/guardians about a student disclosure carries risk for the student, such as physical and/or emotional abuse, abandonment, and/or removal from the home." *Id.*

17.     But AR 103(B) goes further than requiring that School District personnel keep critical details about a child's health, welfare, and upbringing secret from parents or guardians.

18.     AR 103(B) also requires that the School District engage in a secret psychological evaluation of the student, including students as young as 5, conducted by government psychologists, who assist the child with a plan in transitioning to a new gender.

19.     This psychological evaluation of the student and transition plan takes place without any involvement of the student's parents whatsoever.

20.     AR 103(B) states the School District shall provide a Student Support Team a/k/a Gender Transition Team to the student who will "discuss a timeline for

the transition in order to create the conditions supporting a safe and accepting environment at the school." *Id.*

21. The School District's Gender Transition Teams work to assist any student, including students in kindergarten, in his or her transition without any involvement of the student's parents or guardians and without even notifying the parents at all.

22. Furthermore, AR 103(B) requires the School District, at the direction of the student, to:

   a. Address the student by his or her preferred pronouns;

   b. Use the student's preferred name, gender, and pronouns on "school records or documents, such as school IDs, classroom rosters or the yearbook;"

   c. Permit the student to use whatever bathroom that the student chooses; and

   d. To participate on the sports team corresponding with the student's chosen gender.

23. Finally, AR 103(B) requires all School District personnel to undergo "training" provided by a psychologist and a legal team to ensure compliance with AR 103(B).

## B. Doe's Request for Notifications.

24. For the 2023-24 school year, Doe's child was enrolled as a student in the School District.

4

25. While her child was enrolled, Doe sent written notice to the School District that, absent her prior written consent, the School District shall not refer her child to any mental health counselor or social worker for evaluation.

26. Doe's notice to the School District also demanded that the School District notify her within three days of learning about any matters related to gender identity or gender dysphoria expressed by her child.

27. Doe met the principal of her child's school and the school's guidance counselor, to discuss her written notice.

28. At the meeting, School District representatives told Doe that, pursuant to AR 103(B), under no circumstances would the School District notify her if it becomes aware that her child has requested to be addressed by different pronouns, a different name, or other exhibited behavior consistent with gender dysphoria or a desire to transition to a gender other than her biological gender.

29. The School District's representatives further stated to Doe that they would only notify her if "legally required to do so."

30. Finally, the School District's representatives stated to Doe that she had no parental rights under AR 103(B).

31. Thereafter, Doe emailed the School District memorializing what was stated to her at the meeting, including the statements made concerning AR 103(B), and demanding that the School District immediately notify her if she had misstated the School District's positions concerning AR 103(B).

32. The School District responded to Doe's email.

33. Regarding AR 103(B), the School District stated the School District was a "partner" with parents and, therefore, would not comply with Doe's demand to be notified if the School District becomes aware that her child has requested to be addressed by different pronouns, a different name, or other exhibited behavior consistent with gender dysphoria or a desire to transition to a gender other than her biological gender.

34. Rather, the School District stated it would work with the student, not the parent, on such matters.

35. Doe has legitimate concerns regarding her child's risk of transitioning.

36. Doe found her child viewing TikTok videos related to transitioning, videos of transgender individuals advocating transitioning, and videos on sexuality.

37. Doe's child has recently begun hanging out with a new friend group, which includes children who identify as transgender or who are socially transitioning.

38. The years during and after COVID were very difficult for Doe's child at school. It raised social and emotional challenges that affected and were difficult for Doe's child to manage.

39. Doe had concerns that if her child did begin exhibiting signs of gender confusion or gender dysphoria, the School District would immediately begin affirming her before Doe knows and can take steps to help her child obtain appropriate medical care.

40. On or about July 30, 2024, Doe withdrew her child from the School District and enrolled her in a parochial school.

6

41. Doe's child will attend a parochial school for the 2024-25 school year.

42. Doe withdrew her child from the School District because of AR103(B).

43. Doe would consider re-enrolling her child in the School District if AR103(B) is repealed, declared unconstitutional, or enjoined.

**COUNT ONE**
**Violation of the Fifth and Fourteenth Amendments**
**Substantive Due Process**

44. Doe incorporates the previous paragraphs by reference.

45. Under the Fourteenth Amendment, Doe has a fundamental liberty interest in making child-rearing decisions. *Tatel v. Mt. Lebanon Sch. Dist.*, 2022 WL 15523185, at *11 (W.D. Pa. Oct. 27, 2022) ("The parental right to custody, control and nurture of their children is deeply rooted and implicit in the United States' concept of ordered liberty.")

46. "The right of parents to raise their children without undue state interference is well established." *Gruenke v. Seip*, 225 F.3d 290, 303 (3d Cir. 2000)

47. Indeed, the right to make decisions concerning the care, custody, and control of one's children "is perhaps the oldest fundamental liberty interest recognized." *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

48. This includes the "fundamental constitutional right to right to control the inculcation of values in their children," *Tatel* 2022 WL 15523185 at *23, and to make educational choices. *Troxel*, 530 U.S. at 65.

49. The Third Circuit recognizes that through this liberty interest, "parents, not schools, have the primary responsibility to inculcate moral standards, religious

7

beliefs, and elements of good citizenship." *C.N. v. Ridgewood Board of Education*, 430 F.3d 159, 185 (3d. Cir. 2005).

50.    The Third Circuit further recognizes that "School-sponsored counseling and psychological testing that pry into private family activities can overstep the boundaries of school authority and impermissibly usurp the fundamental rights of parents to bring up their children, as they are guaranteed by the Constitution." *Gruenke v. Seip*, 225 F.3d 290, 307 (3d Cir. 2000)

51.    AR 103(B) violated Doe's fundamental liberty interest to make decisions concerning the care, custody, and control of her child.

52.    AR 103(B) violated Doe's fundamental liberty interest by, among other things, (i) failing to provide parents with notification regarding the mental health and well-being of their children, including the life-altering decision to change one's gender, (ii) secretly submitting children to psychological and mental evaluations by government psychologists and officials, (iii) secretly subjecting children to interrogation by a team of government officials about their parents religious and political beliefs regarding, among other things, gender dysphoria and (iv) secretly providing medical and psychological care by government approved psychologists and medical professionals to a child to "assist" a child in making the life-altering decision to change one's gender.

53.    Defendant has acted with reckless disregard for Doe's fundamental parental rights guaranteed under the Fourteenth Amendment.

54.    Defendant knowingly deprived Doe of her right under the Fourteenth Amendment to make significant medical, psychological, permanent, and life-altering decisions concerning her child.

55.    AR 103(B) has caused Doe irreparable harm.

## COUNT TWO
### Violation of Statutory Rights under 20 U.S.C. § 1232(h)

56.    Doe incorporates the previous paragraphs by reference.

57.    Under 20 U.S.C. § 1232h, without the prior written consent of a parent, the School District shall not submit any student to any analysis or evaluation that reveals information concerning, among other things, (a) the political affiliations or beliefs of the student or the student's parents, (b) mental or psychological problems of the student or student's family, (c) sexual behavior or attitudes, (d) critical appraisals of other individuals with whom the student has a close family relationship, and (e) religious practices or beliefs of the student or student's parents.

58.    20 U.S.C. § 1232h confers an individual right on parents to control whether their child will be subject to such evaluations and examinations by requiring the School District to obtain express written consent from a parent before performing them.

59.    AR 103(B) violated Doe's rights under 12 U.S.C. § 1232h.

60.    AR 103(B) requires that, before notifying a student's parent or guardian of a student's desire to transition genders, the School District to evaluate and analyze

a student to determine whether the student's "health, wellbeing, and safety" will be harmed if the student's parent is notified.

61.     In performing that analysis and evaluation, the School District will inquire into a parent's religious and political beliefs concerning, among other things, gender dysphoria, gender transitioning, and sexuality.

62.     In performing that analysis and evaluation, the School District will inquire as to the student's sexual behavior and attitudes.

63.     Under 103(B), the School District will perform this analysis and evaluation without first obtaining the express written consent of a parent, like Doe.

64.     42 U.S.C.A § 1983 permits Doe to bring suit for the deprivation of rights or privileges conferred under the laws of the United States.

65.     The School District deprived Doe of her rights under 20 U.S.C. § 1232h, which is a law of the United States.

## COUNT THREE
### Violation of Common Law Right of Parental Consent

66.     Doe incorporates the previous paragraphs by reference.

67.     Pennsylvania recognizes a common law right that parental consent must be secured before medical treatment is provided. *Parents United for Better Sch., Inc. v. Sch. Dist. of Philadelphia Bd. of Educ.*, 646 A.2d 689, 691 (Pa. Cmwlth. 1994) ("The principle that parental consent must be secured before medical treatment provided is time honored and has been recognized by both the courts and the legislature.")

68.     AR 103(B) states that will provide medical treatment to children without having to secure prior parental consent.

69.     The School District told Doe it would not secure her consent before providing gender affirming or gender incongruent care to her child.

70.     The School District stated to Doe that she has no rights as a parent.

71.     Doe's interests were directly harmed by AR 103(B) and the School District's application of AR 103(B).

72.     Doe has been harmed by the School District's breach of her common law parental rights.

## COUNT FOUR
### Violation of the Minors' Consent to Medical Care Act, 35 P.S. § 10101, et. seq.

73.     Doe incorporates the previous paragraphs by reference.

74.     Under the Minors' Consent to Medical Care Act, parental consent is required before medical treatment is provided to a minor under 18 years of age. 35 P.S. §§ 10101-10105.

75.     AR 103(B) violates the Minors' Consent to Medical Care Act because it permits the School District to provide medical and mental health care without first obtaining the consent of a parent or legal guardian. *See* AR 103(B) at ¶ E ("notifying a student's parent/guardian about his or her gender identity or transition **may be unnecessary**. . . .***Prior to notification of any parent/guardian regarding the transition process***, District staff must work closely with the student to assess the degree to

11

which, *if any*, the parent/guardian will be involved with the process and must consider the health, wellbeing, and safety of the transitioning student. . . When a students transitions during the school year, the Student Support Team shall hold a meeting with the student and parents/guardians, *if they are involved.*")

## Prayer for Relief

WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Court enter judgment in her favor and against defendants and award the following relief:

1.      Permanently enjoining defendants and anyone acting through, with, or on behalf of them, from enforcing AR 103(B);

2.      Permanently enjoining defendants and anyone acting through, with, or on behalf of them, from requiring her child to submit to any analysis, examination, or evaluation Doe's express written authorization;

3.      Declaring AR 103(B) void, invalid, and unconstitutional;

4.      Declaring that the School District violated Doe's constitutional rights;

5.      Awarding plaintiff monetary damages and attorneys fees under 42 U.S.C. § 1983 and 42 U.S.C. § 1988; and

6.      Awarding plaintiff all appropriate and necessary relief.

12

Respectfully submitted,

Dated:  September 19, 2024

/s/Walter S. Zimolong
Walter S. Zimolong, III, Esquire
James J. Fitzpatrick, III, Esquire
ZIMOLONG LLC
wally@zimolonglaw.com
james@zimolonglaw.com
P. O. Box 552
Villanova, PA 19085
(215) 665-0842


/s/ Nicholas R. Barry*
Nicholas R. Barry
America First Legal Foundation
Tennessee Bar No. 031963
nicholas.barry@aflegal.org
611 Pennsylvania Ave SE #231
Washington, DC 20003
*pro hac vice admission forthcoming

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANE DOE                                        :
                                                :     No.  2:24-cv-00051-WSS
            Plaintiff                           :
                                                :
                                                :
v.                                              :
                                                :
                                                :
PINE-RICHLAND SCHOOL DIS-                        :
TRICT                                           :
                                                :
            Defendant

## CERTIFICATE OF SERVICE

I hereby certify the foregoing has been filed electronically and is available for viewing and downloading from the Electronic Case Filing System of the United States District Court for the Western District of Pennsylvania.

Date:       September 19, 2024              */s/ Walter S. Zimolong*

14